IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LUCY LUTA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-792-SLR |
| | ) |
| STATE OF DELAWARE, | ) |
| DEPARTMENT OF HEALTH AND | ) |
| SOCIAL SERVICES, | ) |
| | ) |
| Defendant. | ) |

Gary W. Aber, Esquire of Aber, Baker & Over, Wilmington, Delaware. Counsel for Plaintiff.

Kevin R. Slattery, Esquire and Patricia Davis Olivia, Esquire, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: March 5, 2012
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

On December 28, 2006, Lucy Luta ("plaintiff") filed suit against her employer, the Delaware Department of Health and Human Services ("defendant" or "DDHHS"), alleging employment discrimination. (D.I. 1) Specifically, she claims to have been discriminated on the basis of her race and national origin in violation of Title VII, 42 U.S.C. § 2000(e) et seq. ("Title VII") and 42 U.S.C. § 1891 ("§ 1891"). The parties have engaged in discovery; currently before the court is defendant's motion for summary judgment. (D.I. 35) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. For the reasons discussed below, the court grants defendant's motion.

## II. BACKGROUND

Plaintiff was born in Kenya and received her medical degree from the University of Nairobi. (D.I. 40 at 27) She subsequently received a masters in public health from the University of Dundee in Scotland before returning to Nairobi to practice medicine. (*Id.* at 27-29) In 1999, plaintiff immigrated to the United States; she began working for defendant in 2000. (*Id.*) She was initially hired as a Public Health Treatment Administrator in charge of the Ryan White Program, a state HIV/AIDS treatment program. (*Id.*) Beginning in August of 2005, plaintiff applied for several available positions with defendant.[1]

### A. The PHA II Health Statistics and Epidemiology Position

---

[1] Plaintiff's complaint references a 2004 emergency medicine position for which plaintiff applied but was not hired. (D.I. 1 at ¶¶ 13-14) Defendant argues that the statute of limitations bars any claim related to this 2004 hiring decision. (D.I. 36 at 21) Plaintiff is not moving forward on this 2004 decision and, therefore, it will not be addressed. (D.I. 39 at 1, n.1)

In August of 2005, a DDHHS employee, Dr. Leroy Hatcock ("Hatcock"), stepped down from his Public Health Administrator ("PHA") II position as head of the Health Statistics and Epidemiology division. (D.I. 37 at 1-7; D.I. 40 at 185-87) Dr. Paul Silverman ("Silverman"), a senior official at the DDHHS in charge of hiring and promotional decisions, decided, in the wake of Hatcock's departure, to split Hatcock's former responsibilities in half and appoint Paula Eggers ("Eggers") as the acting chief of epidemiology and Denise Welch ("Welch") as the acting chief of health statistics. (D.I. 37 at 6) Later on, in November of 2005, in an attempt to fill Hatcock's former position, Silverman posted a vacancy announcement for a PHA II Health Statistics and Epidemiology position. (D.I. 40 at 61) Plaintiff applied. (D.I. 40 at 69) She (along with nine other candidates) was deemed qualified and placed on a certification list (i.e., a list of eligible candidates). (D.I. 37 at 7; D.I. 40 at 64) After review of the certification list, Silverman opted not to hire anyone for the position. (D.I. 37 at 7)

On August 21, 2006, a PHA I Epidemiology position was posted. (D.I. 40 at 84) While plaintiff suggests that this was the equivalent of the PHA II Health Statistics and Epidemiology position that had been previously posted, defendant claims this was a full time posting for the job to which Eggers was appointed. (D.I. 39 at 4; D.I. 36 at 11) Unlike the PHA II position, a masters degree was not required, and this allowed Eggers to apply. (D.I. 40 at 84) Plaintiff and Eggers both applied and made the certification list; neither was hired for the position. (D.I. 40 at 45)

The Health Statistics and Epidemiology PHA II position was re-posted on November 22, 2006. Again, plaintiff applied and made the certification list. (D.I. 37 at 21-22; D.I. 40 at 53) She was not hired for the position; the position went unfilled.

2

### B. The PHA I HIV/AIDS Coordinator

In February of 2006, plaintiff applied for a PHA I position as the HIV/AIDS Coordinator, a position formerly held by her boss James Welch ("Welch"). (D.I. 37 at 52; 173; D.I. 40 at 92) Plaintiff, along with John Kennedy ("Kennedy"), a Caucasian male, were two of the fifteen applicants placed on the certification list. (D.I. 37 at 60) Kennedy was a retired Air Force serviceman who had spent over twenty years in the Air Force's Medical Service Corps. (D.I. 37 at 198-200)

A preferred candidate for the PHA I HIV/AIDS Coordinator position had experience with HIV/AIDS programs, but a candidate could be qualified without such experience. (D.I. 37 at 52) One of the minimum qualifications required was experience in management and administration since the position entailed managing approximately thirty individuals. (D.I. 37 at 53; 83) Plaintiff argues that she had more relevant HIV/AIDS experience than Kennedy; specifically, she emphasizes that she helped to develop HIV/AIDS treatment protocols and also managed treatment programs. (D.I. 39 at 6-8) (citing D.I. 40 at 42, 209-10) While Kennedy did not have experience treating HIV/AIDS, he had supervised and worked on HIV-related initiatives. (D.I. 37 at 187) With respect to management responsibilities, Kennedy had managed hospitals and clinics and supervised upwards of three hundred medical personnel. (D.I. 37 at 198-99); plaintiff had supervised five individuals in her work at the DDHHS. (D.I. 40 at 42) Plaintiff and Kennedy both interviewed for the position. It was ultimately offered to Kennedy, who accepted it.

### C. Filing Suit

3

After defendant failed to hire plaintiff for any of these available positions, plaintiff filed a charge of racial and national origin discrimination with the Equal Employment Opportunity Commission ("EEOC"). (D.I. 1 at ¶ 7) On September 29, 2006, the EEOC issued plaintiff a right to sue letter. (*Id.* at ¶ 8) Plaintiff filed suit on December 28, 2006, making the same allegations.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3rd Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3rd Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence

4

to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3rd Cir. 1987)).

## IV. DISCUSSION[2]

### A. Title VII Standard

Title VII provides, in pertinent part, that it shall be unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2.

---

[2] While plaintiff filed suit under Title VII and § 1891, plaintiff is only proceeding under Title VII. (D.I. 39 at 1) Consequently, defendant's arguments with respect to § 1891 are moot and will be addressed no further. (D.I. 36 at 19)

Contrary to defendant's contentions (D.I. 36 at 22), plaintiff is not pursuing a claim of intentional infliction of emotion distress and, therefore, that issue will not be considered. (D.I. 39 at 1)

5

Both parties acknowledge that plaintiff's Title VII discrimination claim follows the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (D.I. 36 at 5; D.I. 39 at 11) Under this framework, plaintiff must first establish a prima facie case of discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3rd Cir. 1999); *Cole v. Delaware Technical and Cmty. Coll.*, 459 F. Supp. 2d 296, 303 (D. Del. 2006). To do this, a plaintiff must produce evidence that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination, such as when similarly situated non-members of the protected class are treated more favorably than the plaintiff. *Id.* With specific respect to element four, a plaintiff must establish a nexus between her falling within the protected class and her adverse employment decision. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 366 (3rd Cir. 2008). Failure to make out a prima facie case will result in a judgment for the defendant.[3] *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3rd Cir. 1999).

While both plaintiff and defendant agree that the above-described analytical

---

[3] The United States Supreme Court and the Third Circuit have cautioned against excessive reliance and preoccupation with the various prima facie formulas used in employment discrimination cases since these formula are simply meant to be tools that aid in the analysis of evidence. *Paul v. F.W. Woolworth Co.*, 809 F. Supp. 1155, 1159 (D. Del. 1992). Ultimately, the elements of a prima facie case will vary depending on the facts of a case. *McDonnell Douglas*, 411 U.S. at 803, n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). The goal of the prima facie case is to simply weed out the most common nondiscriminatory reasons for the plaintiff's rejection. *Lewis v. State of Delaware Dept. of Public Instruction*, 986 F. Supp. 848, 856 (D. Del. 1997).

framework is applicable to the case at bar (D.I. 36 at 6; D.I. 39 at 11), the court notes that a more specific prima facie case is generally used in failure to hire cases. In the failure to hire context, the prima facie case ordinarily utilized by courts is: (1) the plaintiff belongs to a protected class; (2) the plaintiff applied for and was qualified for the position; (3) the plaintiff was rejected; and (4) someone similarly situated from outside the protected class was treated more favorably. *Paul v. F.W. Woolworth Co.*, 809 F. Supp. 1155, 1161 (D. Del. 1992); *Stafford v. Noramco of Delaware, Inc.*, Civ. No. 97-376 GMS, 2000 WL 1868179 at *1 (D. Del. Dec. 15, 2000); *Tillman v. Pepsi Bottling Group, Inc.*, 538 F. Supp. 2d 754 (D. Del. 2008).

Assuming a prima facie case has been established, the burden then shifts to defendant to produce "a legitimate, non-discriminatory reason" for the adverse employment action it undertook with respect to the plaintiff. *Jones*, 198 F.3d at 410. A defendant-employer satisfies its burden of production by "introducing evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763.

If defendant meets its burden of production, the burden shifts back to plaintiff. In order to prevail on the discrimination claim, plaintiff must prove, by a preponderance of the evidence, that the legitimate reasons offered by defendant were not its true reasons for the adverse employment action, but were instead a pretext for discrimination. *Jones*, 198 F.3d at 410. Accordingly, at trial, a plaintiff would be required to prove that

7

defendant's reason was false **and** that discrimination was the real reason for the adverse employment action. *Fuentes*, 32 F.3d at 763. However, to survive a summary judgment motion in which a legitimate non-discriminatory reason has been proffered, plaintiff is required to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.*; *Jones*, 198 F.3d at 413. The court refers to this two-pronged test as the *Fuentes* test. Under prong one of the *Fuentes* test,

> the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.

*Fuentes*, 32 F.3d at 765 (internal quotations and citations omitted). In simpler terms, "a plaintiff may satisfy this standard by demonstrating, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" *Jones*, 198 F.3d at 413 (quoting *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1109 (3rd Cir. 1997)). Generally, cases analyzed under this prong survive summary judgment "when the employer's stated reason for termination is so implausible that a reasonable fact-finder could not believe it." *Connolly v. Pepsi Bottling Group, L.L.C.*, Civ. No. 06-1462, 2008 WL 4412090, at *9 (W.D. Pa. Sept. 22, 2008). Under prong two of the *Fuentes* test, in

8

order to show that a discriminatory reason was more likely than not a motivating or determinative cause of the employer's action, a plaintiff may rely on three types of evidence: (1) previous discrimination against the plaintiff; (2) discrimination by the employer against other persons; and (3) whether an employer has treated other similarly situated employees not within the protected class more favorably. *Id.*; *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3rd Cir. 1998).

## B. Analysis

### 1. The prima facie case

Defendant at bar concedes that elements one, two and three of the prima facie case have been established; it is the fourth element that defendant contests. (D.I. 36 at 5; 14) Specifically, defendant argues that plaintiff has not established that similarity situated persons outside of the protected classes have been treated more favorably. (*Id.*)

In an effort to rebut defendant's position and show that there are "circumstances that give rise to an inference of unlawful discrimination," plaintiff argues that Silverman "manipulated" the hiring process in order to allow Eggers to fill the PHA I position. (D.I. 39 at 3-6; 11-12) Essentially, plaintiff argues that Silverman wanted to promote Eggers and he went out of his way to ensure that she would be a promotable. (*Id.*) Plaintiff's rebuttal makes no mention of the prima facie case with respect to the HIV/AIDS Coordinator position and Kennedy. (*Id.* at 11-13)

Despite the fact that plaintiff's brief is unhelpful in that it does not address the HIV/AIDS Coordinator position at all and does not argue that Kennedy or Eggers are

9

similarly situated, the court nevertheless concludes that a prima facie case has been established. Because Kennedy and plaintiff both made the certification lists for the HIV/AIDS Coordinator position, they were similar in the sense that they were both minimally qualified for the position. Kennedy was obviously treated more favorably when he was hired. With respect to Eggers, while evidence of her comparability with plaintiff is minimal at best, it does appear that she was treated more favorably by Silverman when she was appointed the acting chief of the epidemiology division. In light of this, and the fact that "the **prima facie** requirement for making a Title VII claim 'is not onerous' and poses 'a burden easily met,'" the court will address the next step of the burden-shifting framework. Doe, 527 F.3d at 365 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

### 2. Legitimate nondiscriminatory reason

Plaintiff argues that defendant is required to articulate a legitimate nondiscriminatory reason with sufficient clarity so that plaintiff will have a full and fair opportunity to demonstrate pretext. (D.I. 39 at 14) (citing Burdine, 450 U.S. at 255) According to plaintiff, defendant has failed to meet this burden in that its reasons are subjective and, therefore, too generic and vague. (Id. at 13-15) (noting that Silverman claimed he was unable to find an "acceptable" candidate for the PHA I Epidemiology position) Again, plaintiff did not address the HIV/AIDS Coordinator position in this context.

Contrary to plaintiff's position, defendant has met this "relatively light" burden. Tomasso v. Boeing Co., 445 F.3d 702, 706 (3rd Cir. 2006). With respect to filling the

10

PHA I Epidemiology and PHA II Health Statistics and Epidemiology positions, Silverman indicated that he was not satisfied with the applicants interviewed, including plaintiff, who he did not feel interviewed well or had the requisite level of managerial experience. Additionally, he was also considering whether and how to restructure Hatcock's former responsibilities. (D.I. 36 at 2-3, 8, 11; D.I. 37 at 8, 14-15, 35; D.I. 40 at 87) With respect to hiring Kennedy over plaintiff for the HIV/AIDS Coordinator position, defendant explains that Kennedy had "extensive managerial experience," something that plaintiff lacked and the position required. (D.I. 36 at 4; 17-18) These justifications constitute sufficiently clear nondiscriminatory reasons for not hiring plaintiff.

### 3. Pretext

As discussed, under the two-prong *Fuentes* test, to survive a summary judgment motion in which a legitimate non-discriminatory reason has been proffered, plaintiff is required to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 763; *Jones*, 198 F.3d at 413.

#### a. PHA I Epidemiology and PHA II Health Statistics and Epidemiology positions

Plaintiff does not substantively address the two-prong *Fuentes* test, but instead reiterates her argument that defendant has not provided a sufficiently clear legitimate nondiscriminatory reason for not hiring her. (D.I. 39 at 18) As discussed, that argument is not persuasive. Because plaintiff has not addressed either prong of the *Fuentes* test,

11

plaintiff has failed to meet her burden and summary judgment will be granted for defendant with respect to promotion decisions related to the PHA I Epidemiology and PHA II Health Statistics and Epidemiology positions.

Even had plaintiff addressed *Fuentes* in an attempt to meet her burden, on the facts presented, summary judgment would still have been appropriate. Nowhere has plaintiff explained how her failure to receive a promotion was in any way related to discriminatory animus. If we assume that Silverman "manipulated" the hiring process in an effort to promote Eggers, that fact alone does not suggest that he made hiring decisions based upon plaintiff's race or national origin. Moreover, Hatcock's responsibilities were eventually restructured and the epidemiology unit was incorporated into a different section at DDHHS, lending credence to defendant's legitimate nondiscriminatory reason. (D.I. 37 at 9-11; 37) Standing alone, Eggers' appointment to acting chief of epidemiology and her ability to apply for the PHA I Epidemiology position would not allow a reasonable factfinder to conclude that defendant's decision not to hire plaintiff was based on race or national origin discrimination. While these facts allow plaintiff to survive the low level prima facie test, without other evidence suggestive of discrimination, summary judgment would be appropriate for defendant.

### b. PHA I HIV/AIDS Coordinator

In an effort to survive summary judgment, plaintiff looks to prong one of the *Fuentes* test and argues that evidence of record suggests that defendant's proffered nondiscriminatory reason - that management experience was a significant consideration - is not believable. (D.I. 39 at 18-20) Specifically, plaintiff argues that her extensive experience with HIV/AIDS treatment programs relative to Kennedy's lack of experience

12

treating the disease makes defendant's nondiscriminatory reason weak and implausible and therefore unworthy of credence. (*Id.*)

Plaintiff claims that familiarity and experience with HIV/AIDS and HIV/AIDS treatment programs was absolutely essential to the position and was something that Kennedy lacked. (*Id.*) In support of this premise, plaintiff points to: 1) the preference for someone with experience in the administration of HIV/AIDS programs reflected in the position's vacancy announcement and the Request for Recruitment document;[4] 2) the testimony of Debra Hoxter ("Hoxter"), a human resources manager at the DDHHS; 3) the testimony of Jill Rodgers ("Rodgers"), a senior figure at DDHHS who oversaw the HIV/AIDS Coordinator position and was responsible for the ultimate hiring decision; 4) a January 3, 2006 email from Rodgers regarding filing Welch's former position; and 5) the testimony of Welch himself. (D.I. 39 at 6-9; 19-20) That experience with HIV/AIDS was preferable was evidenced by the position's posting and the Request for Recruitment document; both list such experience as a preferred qualification. (D.I. 37 at 52; D.I. 40 at 91-93) It was also clear, however, that such experience was not required or essential in order to be qualified or eventually hired. The position posting specifically states that "[a]pplicants who do not possess the preferred qualification will still be eligible to compete for this position if minimum qualifications were met." (D.I. 37 at 52) The Request for Recruitment document also explains that preferred qualifications "are not required for qualification." (D.I. 52) While Hoxter did state that familiarity with HIV/AIDS

---

[4] This document appears to be a form sent to HR that describes the requirements and preferences for an open position so that HR can prepare a vacancy announcement. (D.I. 40 at 91-93)

13

would be "essential" to the HIV/AIDS Coordinator position (D.I. 40 at 149), the court notes that Hoxter is a human resources manager primarily responsible for ensuring that candidates meet the minimum qualifications set forth in a position posting; Hoxter was not a member of the health staff knowledgeable enough or tasked with making the ultimate determination as to the candidate best suited to the job. (D.I. 37 at 93-94; 97) Furthermore, Hoxter acknowledged at her deposition that a preferential qualification is an "additional skill" that a "hiring manager would like [a new hire] to have upon entry [in]to the position." (D.I. 37 at 91-92) With respect to Rodgers' testimony and email, while plaintiff argues that Rodgers contends that knowledge of AIDS treatments is essential, a comprehensive reading of her email and deposition testimony indicates that she sees AIDS experience as a preferential qualification; clinical knowledge of the disease was not a prerequisite for qualification and ultimate success. (D.I. 37 at 69-72; D.I. 40 at 57) Finally, plaintiff claims that Welch indicated that HIV/AIDS knowledge was "essential" to the position; however, a fair reading of the abridged deposition excerpt provided suggests the opposite. (D.I. 40 at 208)

Based upon the above, the court concludes that plaintiff has not carried her burden. First, plaintiff fails to acknowledge that Kennedy had experience working on HIV-related treatment initiatives. (D.I. 37 at 187) Second, the evidence on which plaintiff relies only suggests that HIV/AIDS experience was preferential, not that it was essential. There is no dispute that managerial experience was an essential consideration and Kennedy had more managerial experience than plaintiff. *See supra*, section II.B. In short, the evidence plaintiff cites in support of her position does not make defendant's nondiscriminatory reason appear weak, implausible, inconsistent,

14

incoherent or unworthy of credence. It certainly does not make defendant's reason appear so implausible that a reasonable fact-finder could not believe it. *See Connolly, supra* pg. 8. It simply suggests that knowledge and familiarity with HIV/AIDS was a consideration and plaintiff may have had more experience than Kennedy in this respect.

The ultimate problem with plaintiff's argument is that she presents nothing more than a dispute about relative qualifications. More is required in order to show pretext. *Bennun v. Rutgers State University*, 941 F.2d 154, 170 (3rd Cir. 1991) ("This Court has held that 'more than a denial of promotion as a result of a dispute over qualifications' must be shown to prove pretext.") (citing *Molthan v. Temple Univ.*, 778 F.2d 955, 962 (3rd Cir. 1985)). As discussed, the court is tasked, on summary judgment in an employment discrimination cases, with deciding whether evidence has been presented sufficient to create a genuine issue of material fact with respect to **whether intentional discrimination has occurred**. On these facts, plaintiff has not produced sufficient evidence. A reasonable factfinder could not conclude, based solely on the fact that a white man with more managerial experience was hired over a black Kenyan woman with arguably more HIV/AIDS experience (and thirteen other qualified candidates), that racial and national origin discrimination has occurred.

## V. CONCLUSION

For the reasons discussed above, the court grants defendant's motion for summary judgment. (D.I. 35) An appropriate order shall issue.

15